CHANCERY.                **Brown, &c. vs Combs, &c.**

*Case* 88.               APPEAL FROM THE WOODFORD CIRCUIT.

                         *Execution Sales.   Purchase under execution.*

*Sept.* 29, 1846.   CHIEF JUSTICE MARSHALL delivered the opinion of the Court, which
                    was suspended until the 29th June, 1847, when the suspension was
                    removed.

A purchaser un-
der execution
will hold against
the vendee by
parol of the de-
fendant in the
execution.

THE alledged executory agreement of 1835, between Stanton's heirs and Smith, being in parol, could not have been enforced against the subsequent purchase of Divine, under the execution against Stanton's heirs. But Divine having received a conveyance from the Sheriff, might have retained the title, and recovered the land, subject at most to a lien for the reimbursement of the $250 which Smith had paid. The reversal of the judgment under which he had purchased, threw no difficulty in the way of his retaining the title or recovering the possession; and whether Stanton's heirs or the plaintiff in the reversed judgment, should have the price of the land, was a matter of no interest to him. He would in the one case as much as in the other, have been entitled to withhold any sum which Smith should rightfully reclaim from him on account of the prior parole purchase. And the question who should have the money arising from his own purchase, would be just as immaterial to him before as after he should make payment.

Had Divine, then, upon being informed of the reversal of the judgment under which he had purchased, a right to decide at once and for himself, that Stanton's heirs were entitled to the price, and to discharge himself from his obligation to the plaintiff, by paying the price to Stanton's heirs, or by surrendering his claim to the land to them or their vendee, Smith? If his liability to the plaintiff had then stood upon the sale bond given under his execution purchase, would such a payment to Stanton's heirs, or such arrangement with them, unauthorized by any order of Court, have been a sufficient ground for quashing an execution on the bond issued after the plain-

tiff had obtained a second judgment? Would not Divine, in acting upon the fact of reversal, have been bound to know that the case was remanded for further proceedings, and that the plaintiff was still maintaining his claim, and might again recover judgment? Would the Court, upon the cause being remanded for further proceedings, have granted at once, and as a matter of course, the motion of Stanton's heirs, to direct the money due on the sale bond to be paid to them? Or would it for their benefit, and as a matter of course, have sanctioned an arrangement, by which, without the consent of the plaintiff, they would be enabled to withdraw from his reach both the land and its price? · If this be doubtful, much more is it doubtful whether Divine and Stanton's heirs could by their own agreement, have thus affected the interest of the plaintiff, and whether, by their mere agreement, Divine's liability on the sale bond could be discharged, and his purchase under the execution be rescinded, so that the land might be conveyed to Smith.

But if Divine, as purchaser under the execution, standing bound in the sale bond for the price of the land, had a right to discharge himself and give up his purchase, by arrangement with Stanton's heirs, and without regard to the interest of the plaintiff, it does not follow that he had the same right, after he had by the execution of his own note to the plaintiff, with surety for the amount due on the sale bond, procured the return of satisfaction on an execution which issued on the bond, and after having, with his friends, made a bill of exchange for the purpose of paying this note, which with their assent, and upon their solemn promises of punctual payment, was endorsed and negotiated by the plaintiff's attorney, to raise the amount due on the note. These additional transactions, constituting private and personal engagements on the part of Divine and his associates, and subjecting the plaintiff or his attorney to responsibilities on the bill of exchange, more extensive than their mere liability to restitution of the proceeds of the sale, must also be regarded as changing the nature of Divine's liability, and of the rights which he may have had if the case had stood upon the sale bond. That instrument having been taken in the

A sale was made of land, and a deed made by the Sheriff to the vendee of the purchaser, and the purchaser under the execution gave his negotiable notes to the plaintiff in the execution, and the execution on the sale bond was returned satisfied.— Held that the purchaser could not in equity be relieved from liability upon his negotiable notes given to the plaintiff in the execution in lieu of the sale bond and as satisfaction thereof.

regular course of legal remedy, was in effect a part of it, and may have been subject to its vicissitudes, to the adverse and changing rights of the parties to the suit, and to such right of restitution as the defendant had, upon the reversal of the judgment under which it was taken. Divine, as the obligor, was thus connected with the legal proceedings in the suit,. and subject to any order of the Court respecting the payment of the bond. But the sale bond having been satisfied, and Divine's liability resting on a private engagement to the plaintiff, he had no further connection with the legal proceedings, and was subject to no order growing incidentally out of it. An order of restitution would have been against the plaintiff alone, who had received satisfaction of the bond, and could not have affected Divine's engagement to the plaintiff, over which the Court had no power.

In making the arrangement by which Divine agreed that the land might be conveyed to Smith in discharge of his own liability for the price, the parties assumed in the first place, to decide that Stanton's heirs were absolutely entitled to restitution of the proceeds of sale from the plaintiff, and in the second place, that Divine being indebted to the plaintiff for the price of the land, had a right, at his own will, to discharge his debt to the plaintiff, by discharging the claim of restitution against him. Under color of these rights, Stanton's heirs by his consent, convey the land to Smith, and Divine and his associates claim that they are thereby discharged from their engagements to the plaintiff, who, if the transaction be effectual as contended, is not only deprived of the means of making his debt, but is subjected to the additional loss which may have been incurred in paying the protested bill.

We say Divine and Stanton's heirs had no right thus to dispose of the plaintiff's demand against the former. If Divine actually surrendered his title to the land, with the intention of thereby discharging the claim of Stanton's heirs against the plaintiff, and that of the plaintiff against himself, as he and Stanton's heirs had no right to dispose of the plaintiff's claim, the utmost effect of the arrangement was to make Divine the purchaser and assignee of the claim of Stanton's heirs against the plain-

tiff. And as the Chancellor would have enforced their claim of restitution against the plaintiff, only by giving credit on the plaintiff's demand against them, we do not perceive upon what principle of equity, Divine, who without necessity, and with his eyes open, and in disregard of the plaintiff's interest and of his own obligations, purchased the right of Stanton's heirs, can claim to stand in any better condition than they themselves would occupy.

The reversal of the first judgment against Stanton's heirs did not affect the consideration of Divine's debt to the plaintiff, because it did not affect the validity of his purchase of the land. If he has given up that purchase and thereby lost the consideration of his liability, it was his own voluntary act, and he and not the plaintiff, whose interest he should have regarded, but has, perhaps, intended to injure, should be the loser. Even if there was no intentional bad faith on his part towards the plaintiff, his claim to be discharged from his debt in consequence of his own arrangement with other debtors of the plaintiff, has no equity in it. He stands at best, as the assignee of Stanton's heirs, of their claim against the plaintiff, arising incidentally in the prosecution of his older and larger demand against them, and he unnecessarily purchased the claim in furtherance of a transaction obviously tending to injure the plaintiff and so intended by his vendors. His claim to be relieved from his debt to the plaintiff in consequence of this transaction is, in our opinion, unconscientious and inequitable. The other parties to the bill of exchange, against whom judgment has been obtained, stand of course, on the same ground. Such would be our conclusion even if it were certain that Divine had given up his title to the land and had no indemnity, for he would have brought the loss upon himself voluntarily and without fault of the plaintiff. But while we see in the record a deed from the Sheriff to Divine, and a subsequent deed from Stanton's heirs to Smith, we see no conveyance from Divine, either to Smith or to Stanton's heirs, and for all that appears, the legal title is still in him. If there are equities against it growing out of the arrangement which has been under considera-

*A purchaser of property under execution issued upon a judgment which is afterwards reversed, still holds the property purchased.*

tion, they are of his own wilful and wrongful creation, and give him no equity against the plaintiff.

Under these views of the case we are satisfied that the plaintiffs in error have no ground to complain of the decree, so far as it has dissolved the injunctions against the judgments obtained upon the bill of exchange, and given damages on the dissolution. But upon the cross errors assigned by the defendant, in whose name the judgments were obtained, the question arises whether the Court did not err in perpetuating the injunction for the sum of $250, with interest, as being the amount which Smith might reclaim for his payment made to Stanton's heirs, on his parol purchase before the levy of the execution under which Divine bought the land. This was, doubtless, decreed under the opinion that Divine's purchase was subject to the re-payment of this sum of $250, with interest, to Smith. And as we concur in this opinion, it seems properly to follow, that to this extent there was a claim to the purchase money paramount to that of the plaintiff in the execution. If Divine had held the land under his purchase, he would have been liable to pay this sum to Smith, who would have had an equitable lien for it on the dissolution or repudiation of his contract for the purchase, and there is little doubt that the lien would have been asserted, as in all probability it will be, if Divine should yet hold the land, since Stanton's heirs are insolvent. As in that state of case Divine would have had an equity to withhold so much of his debt to the plaintiff, in consequence of a failure, so far, of the consideration, it would seem that if he has, in fact, surrendered the land and thus lost, though wilfully, the whole benefit of his purchase, this circumstance furnishes no reason why he should be subjected to greater loss, or why the plaintiff should have a greater advantage than if the purchase under the execution had been carried out in good faith.

Wherefore, upon the original and cross errors, the decree is affirmed.

*Morehead & Reed* for appellant; *Robinson & Johnson* for appellees.